COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


RAYMOND K. COVINGTON

                          MEMORANDUM OPINION[*] BY
v.   Record No.  0995-96-2    CHIEF JUDGE NORMAN K. MOON
                              DECEMBER 17, 1996
EDWINA A. COVINGTON


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William H. Ledbetter, Jr., Judge

John M. DiJoseph (Sattler & DiJoseph, P.C.,
on brief), for appellant.

No brief or argument for appellee.


Raymond K. Covington appeals the judgment of the circuit court deciding matters of spousal support, custody, and equitable distribution. Appellant raises six questions: (1) whether the trial court erred by failing to consider all the factors for determining spousal support under Code § 20-107.1; (2) whether the trial court erred by refusing to give appellant an ore tenus hearing on the issue of custody; (3) whether the trial court erred when it held that the denial of visitation was not a change of circumstances warranting a change in custody; (4) whether the trial court miscalculated child support under the guidelines; (5) whether the trial court's legal analysis of the parties' antenuptial agreement was flawed and failed to consider the factors enumerated by Code § 20-107.3(E) in determining equitable

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

distribution; and (6) whether the trial court miscalculated the marital share of appellant's federal government pension. We find that the trial court did not err in its disposition of these matters, and accordingly, we affirm the decision of the trial court.

The parties were married on November 10, 1980. The parties entered an antenuptial agreement dated November 12, 1980, wherein appellee relinquished all rights in appellant's real estate in exchange for $6,000, or one-third of the value of the real estate, whichever was greater, at the time of appellant's death.

Appellee left the marital abode on April 2, 1993, after a prolonged period of disagreement between the parties. Judgment of the Circuit Court of Spotsylvania County was entered April 15, 1996, granting appellee a no-fault divorce, granting appellee custody of the parties' two children, Edwina, age ten, and Rae-Ann, age nine, determining equitable distribution of marital assets, and awarding spousal and child support.

Several pieces of property were acquired during the marriage. In 1980, appellant acquired three parcels totalling about eight acres near Thornburg in Spotsylvania County ("Thornburg property"). Appellant contends that the property was acquired with his income earned prior to the parties' marriage. On January 22, 1993, shortly before the parties separated, appellant created a trust (the "CQ Trust") benefitting the parties' children and transferred the Thornburg property to the

trust. Appellant, appellant's brother and a friend were named as trustees. The property was valued at $28,800 and was not encumbered.

In 1981, appellant purchased a house on Clay Street in the District of Columbia ("Clay Street property"). The home served as the parties' marital abode until they relocated to Spotsylvania County. The property was sold in 1989.

On April 20, 1983, appellant bought a duplex in Rochester, New York for $5,500 titled in his name. The home was in need of much repair at the time of purchase and was repaired by members of appellant's family. The home was purchased for appellant's parents and was titled in appellant's name because at the time appellant's mother's credit was "overextended." Appellant asserts that the home was purchased with non-marital funds supplemented by funds of appellant's mother. The property was later sold.

In October, 1983, the parties jointly acquired a parcel in Glenn Hill Subdivision in Camp Springs, Maryland ("Camp Springs property"). The property was sold in 1990 to Mr. Covington's brother for the $67,451 balance of the mortgage. The property was valued at $118,000.

In 1987, appellant purchased a townhouse in Bragg Hill, located in Fredericksburg ("Bragg Hill property"). Appellant asserts that his family provided most of the purchase price. Appellee contends that she made a substantial monetary

contribution. On January 22, 1993, shortly before the parties' separation, appellant transferred the property to the CQ Trust. The property was valued at $30,400. It is not clear what the balance was on the deed of trust, however, the balance was $25,500 at the time appellant purchased the property.

On January 12, 1987, the parties purchased a home on Noel Drive in Arrington Heights Subdivision in Spotsylvania County ("Noel Drive property"). This residence served as the marital abode until the parties' separation on April 2, 1993. Subsequently, the property went to foreclosure and was sold at auction on December 3, 1993.

In 1988, the parties purchased a lot next to the Noel Drive property. The lot was valued at $16,000 and was not encumbered.

In addition to the real property assets, the marital estate also included appellant's government retirement. Appellant was employed by the United States Patent and Trademark Office beginning in 1974. The court calculated the marital share as thirteen years over appellant's total years of service. Appellee withdrew her retirement benefits during the course of the marriage and consequently was not the beneficiary of a retirement fund.

The parties' liabilities include appellee's medical and legal bills totalling $22,000 and appellant's income tax liability for 1990, 1991, and 1992 totalling more than $52,000.

<u>Spousal Support</u>

- 4 -

Code § 20-107.1 delineates the specific factors to be considered by the trial court in determining spousal support. Appellant's assertion that the trial court failed to consider these factors is contradicted by the record. The trial court's cognizance of the statutory factors is evidenced by the court's statement that "[c]onsidering all the factors enumerated in § 20-107.1, including the monetary award, the court is of the opinion that . . . ." Appellant properly argues that mere recitation that the factors have been considered is insufficient. However, the record indicates that the trial court heard and considered evidence addressing the factors and weighed them in making its final award.

Contrary to appellant's apparent belief that the trial court did not give proper consideration to appellee's ability to work, the trial court specifically observed that "[appellant] appears to be in good health. [Appellee] suffers from several medical conditions, including diabetes and asthma. Her disability is obvious. Thus, her work history and earnings records are of marginal relevance at this point." While appellant may disagree with the weight the trial court has accorded the evidence regarding appellee's health, the record nonetheless indicates the court's clear consideration of the matter.

Similarly, appellant argues that "the court failed to give due weight to the huge tax bill of about $52,000, that [appellant] owes." The court's opinion observes that "[t]he

parties' liabilities that have been particularized for the court are [appellee's] medical and legal bills . . . totalling about $22,000.00, and an income tax liability of [appellant's] for 1990, 1991, and 1992 amounting to more than $52,000.00."  Again, the trial court's opinion clearly evidences consideration of the factor.  The court is under no obligation to give more or less weight to this factor, and appellant's belief that the matter should have been accorded more weight does not constitute grounds on which this Court may interfere with the findings of the trial court.  Nor does the fact that the trial court did not proceed to discuss each of the remaining factors enumerated by Code § 20-107.1 individually require a finding of error.  Provided the record indicates the court's consideration of these factors, as is the case here, the trial court need not disclose the totality of its considerations nor must it address each factor point by point in its opinion.

### Ore Tenus Hearing

Appellant accurately asserts that it is well established that "[t]he trial court's decision, when based upon an ore tenus hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it."  Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986).  However, this holding does not stand for the proposition that an ore tenus hearing is required.  It is within the discretion of the trial court to take evidence in such a manner.  The court's

decision not to do so does not, as a matter of law, require reversal of the trial court's decision.

It is also worth noting that appellant's claim that the trial court erred, even if a meritorious claim, was not properly preserved for consideration on appeal. As noted in the trial court's thorough letter opinion which, in relevant part, addressed appellant's exception to the method in which evidence was taken, it was appellee, not appellant, who originally requested an <u>ore</u> <u>tenus</u> hearing. Here, it is appellant that objects to the fact that an <u>ore</u> <u>tenus</u> hearing was not held. However, it was the parties' decision not to pursue such a hearing. The trial court offered the parties the option of having the matter referred to a commissioner in chancery or, if the parties wished, of taking evidence by deposition. (Letter Opinion from J. William H. Ledbetter, Jr. to Thomas Y. Savage, Esq. and Nicholas A. Pampas, Esq., of 10/27/95, trial court record at 329-330). Neither party ever submitted a sketch decree of reference or otherwise informed the court that they wished to have a commissioner appointed to receive evidence and consequently, the trial court reached the logical conclusion that the parties had decided to take evidence by deposition. <u>Id.</u> at 330.

In addition to relying on the parties' apparent preferences with regard to this matter, the trial court's action in this matter also reflects the fact the trial court was familiar with

the parties.  The trial court explained, noting that:

> Finally, it should be noted that [the
> parties] are not strangers to the court.
> They have appeared and testified at ore tenus
> hearings, so that the court has observed
> their demeanor and has had occasion to
> determine their credibility and to weigh
> their testimony.  Much of what is contained
> in the depositions is a restatement, with
> more detail and elaboration, of previous
> testimony heard by the court.  The court has
> carefully reviewed the transcribed testimony
> and the exhibits, and under the circumstances
> of this case, has been able to give full and
> fair consideration to the evidence.

Id.

The trial court acted within its sound discretion in taking evidence and fairly relied on the preferences of the parties in proceeding.  Accordingly, we find the trial court did not err by not conducting an ore tenus hearing.

### Denial of Visitation

Appellant asserts that the court erred by holding that the denial of visitation by appellee did not constitute a material change in circumstances warranting a change in custody. Appellant has misstated the court's holding.  The court did not decide it was not a change of circumstances; it decided that "[appellant's] assertions about visitation are not, under the circumstances, sufficient to justify change of custody even giving due deference to all of his complaints."

The trial court's opinion clearly indicates the additional circumstances it considered and which it found warranted appellee's continued custody.  The trial court indicated that the

parties' children, ages ten and nine, had lived with appellee all their lives, that appellee has been their primary caretaker, and that appellee continues to reside in the Fredericksburg community in which the children have grown up, whereas appellant has relocated to Fort Washington, Maryland.  In light of these circumstances and considering all the factors enumerated by Code § 20-124.3, the trial court properly found that the best interests of the children were served by continuing custody with appellant.

## Child Support Calculations

Appellant argues that in calculating child support, the trial court did not give sufficient weight to appellant's ability to pay and appellee's ability to work, factors prescribed under Code § 20-108.1(B)(11).

Had the trial court failed to consider these factors, this would constitute error.  Hiner v. Hadeed, 15 Va. App. 575, 578, 425 S.E.2d 811, 813 (1993).  However, the record indicates that the court gave consideration to these factors.  The relative weight accorded these factors is based on the evidence presented to the trial court and is determined in the court's ultimate discretion.  Here the trial court concluded, "[c]onsidering the factors enumerated in § 20-108.1, and with special consideration of the statutory guidelines in § 20-108.2, . . . that [appellant] should pay $950 per month as child support, the presumptive amount . . . ."  This amount constituted a reduction in

appellant's prior support obligations.

Contrary to appellant's assertions, this reduction was made in light of the trial court's recognition of appellant's diminished capacity to pay. The trial court specifically stated in its letter opinion that "[t]he diminution from previous support orders is based on the significant tax indebtedness owed by [appellant] and the money now being received by [appellee] from Social Security for the children."

Likewise, with regard to the appellant's argument that the court did not give proper weight to the ability of appellee to work, the record clearly indicates the court considered this factor. The trial court specifically observed that "[appellant] appears to be in good health. [Appellee] suffers from several medical conditions, including diabetes and asthma. Her disability is obvious. Thus, her work history and earnings records are of marginal relevance at this point."

Finding that the statutorily prescribed factors were considered by the trial court in reaching its decision, we find no error and again reiterate that the weight accorded the evidence by the trial court is soundly within the discretion of the court.

### Antenuptial Agreement and Equitable Distribution

Prior to July 1, 1986, the validity of antenuptial agreements was governed by conditions set forth in Batleman v. Rubin, 199 Va. 156, 158, 98 S.E.2d 519, 521 (1957). By the

enactment of the Virginia Premarital Agreement Act (Act), effective July 1, 1986, execution of such contracts has been given legislative approval within the limits set forth therein.

Batleman provided that:

> To render an ante-nuptial agreement valid, there must be a fair and reasonable provision therein for the wife, or--in the absence of such provision--there must be full and frank disclosure to her of the husband's worth before she signs the agreement, and she must sign freely and voluntarily, on competent independent advice, and with full knowledge of her rights.

199 Va. at 158, 98 S.E.2d at 521 (citation omitted). Here, the record supports the conclusion that the agreement is valid.

At issue, however, is the trial court's interpretation of the agreement as being limited to only the Thornburg property and further, being limited only to relinquishment of property rights at the time of appellant's death. Antenuptial agreements are subject to the same rules of construction and interpretation as other contracts. Moore v. Gillis, 239 Va. 657, 662, 391 S.E.2d 255, 257 (1990). It is well established that the "plain meaning" rule is to be employed when interpreting contracts. Appalachian Power Co. v. Greater Lynchburg Transit Co., 236 Va. 292, 295, 374 S.E.2d 10, 12 (1988). Clear and explicit language in a contract is to be understood in accord with its ordinary meaning, and, if the meaning is plain when read, the instrument must be given effect accordingly. Moore, 239 Va. at 662, 391 S.E.2d at 257.

In the agreement entered into by the parties, appellee

relinquishes all interest in appellant's real estate in exchange for payment of $6,000, or one-third of the value of the real estate, whichever is greater, upon the death of appellant. The payment is to be in lieu of dower and is to be paid on appellant's death. The trial court has determined, and we agree, that the "plain reading of the express language of the agreement shows that it is limited to relinquishment of property rights by [appellee] upon death of [appellant] . . . the agreement does not address relinquishment of marital property rights upon the breakup of the marriage."

"Where, as here, the intention of the parties has been stated plainly, a court may not fashion a different agreement for them under the guise of contract interpretation." Moore, 239 Va. at 662, 391 S.E.2d at 257. Accordingly, we find that the trial court properly determined that the parties' antenuptial agreement has no effect on equitable distribution of the marital estate. Having concluded that the trial court properly addressed the antenuptial agreement, we conclude that the trial court appropriately considered the prescribed factors enumerated in Code § 20-107.3(E).

Marital Share of Appellant's Federal Government Pension

Code § 20-107.3(G) provides that no marital award of pension benefits "shall exceed fifty percent of the marital share of the cash benefits actually received . . . ." "Marital share" is defined in that section as "that portion of the total interest,

the right to which was earned during the marriage and before the last separation of the parties . . . ."  This provision is mandatory and can be implemented through the use of a simple formula.  "The number of years that the spouse was in the pension plan while in the marriage serves as the numerator and the total number of years in the pension plan serves as the denominator. This fraction establishes the marital share of the pension as defined by the statute."  <u>Mosley v. Mosley</u>, 19 Va. App. 192, 198, 450 S.E.2d 161, 165 (1994).  This fraction is in turn to be multiplied by the percentage of the marital share awarded to the spouse, which may not exceed fifty percent of the marital amount.  <u>Id.</u>  This formula serves to diminish the percentage of a wife's/husband's pension the spouse will receive as wife's/husband's employment continues and retains the fifty percent of the marital share limitation.

Here, the court has properly employed this formula in calculating the marital share and the appellee's benefit given the court's award of thirty-three percent of appellant's pension to appellee.  Accordingly, we find the court did not err in calculating the marital share.

<u>Affirmed.</u>